

**United States Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*     *(203) 821-3700*
*157 Church Street, 25th Floor*     *Fax (203) 773-5376*
*New Haven, Connecticut  06510*     *www.justice.gov/usao-ct*

October 28, 2015

*<u>Via Electronic Mail & CM/ECF</u>*

Honorable James C. Francis
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**Re: *SEC. v. Shapiro, et al.* 15 Civ. 7045 (RMB)(JCF)**

Dear Judge Francis:

On September 30, 2015, we wrote to Judge Berman, on behalf of the United States Attorney for the District of Connecticut (the "Government") to request a pre-motion conference to discuss a proposed motion to intervene in the above-title matter (the "Civil Case") for the limited purpose of seeking a stay of discovery until the parallel criminal case, *United States v. Ross Shapiro, et. al.*, Case No. 3:15cr155 (RNC), (the "Criminal Case"), is completed.  *See* Endorsed Letter dated Sept. 30, 2015 [doc. # 23].  On October 19, 2015, the parties and the Government appeared before Judge Berman at which time the Court granted the Government's motion to intervene and denied a blanket stay of discovery.  Judge Berman also referred the Civil Case to this Court, to address, among other things, discovery issues. *See* Order Referring Case to Magistrate Judge [doc. # 30].

The Government proposes a stay of depositions, interrogatories and document production for all non-parties to the Civil Case until the conclusion of the Criminal Case.  The Government is not opposed to the Securities and Exchange Commission ("SEC") providing the defendants with initial disclosures, interrogatories, requests for admissions and all discoverable documents in its possession.  In addition, the Government, in the Criminal Case, has already turned over discovery – including all reports of interviews, notes underlying agents reports of interviews, grand jury testimony, and supporting documentation (electronic chats, emails, trade tickets) from Nomura and other parties that the government has received and processed.[1]  Staying additional discovery from third parties in the Civil Case allows the government to prepare for the criminal

---

[1] To the extent that any reports of interviews, grand jury transcripts or other documentation have not yet been created or received by the Government and not processed through the government database, they have obviously not yet been disclosed.  However, as of this filling, the Government has disclosed all materials in its database.

trial without interference from the Civil Case, protects third parties from undue burden by being simultaneously involved in two separate litigations, but still allows the defendants to begin their defense of the Civil Case. Meanwhile, the defendants will still have access to third party discovery through the Criminal Case without running the risk of using the Civil Rules of Discovery to abuse the criminal trial process.  Indeed, this is an option that Judge Berman himself said he would consider.[2]

In the alternative, to the extent this Court is not prepared to issue a stay of all third party discovery for the pendency of the criminal trial, the Government requests that a stay be issued for all third party discovery until such time as the government produces its witness list.  The government and the defendants have jointly agreed that the government should issue its witness list in May 2016.  When that list is issued, the defendants could revisit the issue of third party discovery from non-witnesses with this Court.

## I.   <u>Background</u>

This case and the parallel Criminal Case arise out of the same set of facts.   The defendants are alleged to have defrauded customers of Nomura Securities International ("Nomura") by making materially fraudulent and misleading statements to victim-customers.

On September 3, 2015, a grand jury sitting in the District of Connecticut returned an indictment, *United States v. Ross Shapiro, et. al.*, Criminal No. 3:15-cr-155(RNC), charging Ross Shapiro, Michael Gramins, and Tyler Peters—all of whom are named in this Civil Case—with one count of Conspiracy to Commit securities fraud, wire fraud, and false statements, in violation of Title 18, United States Code, Section 371; two counts of Securities Fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5, and Title 18, United States Code, Section 2; and seven counts of Wire Fraud, in violation of Title 18, United States Code, Sections 1343 and 2.

The Indictment alleges that, from approximately 2009 through approximately 2013, Shapiro, Gramins, Peters, and others: (i) made fraudulent statements to victim-customers to obtain unearned and secret compensation on RMBS trades; and (ii) deprived Nomura's victim-customers of information relevant to making a discretionary economic decision. *Id.* at ¶ 34.

Shapiro, Gramins, and Peters supervised the Residential Mortgage Backed Securities ("RMBS") trading desk at Nomura in New York. *Id.* at ¶ 4. Shapiro was the Managing Director who oversaw all of Nomura's trading in RMBS; Gramins was an Executive Director on the RMBS Desk and principally oversaw Nomura's trading of bonds composed of sub-prime and option ARM loans; and Peters was the senior-most Vice President on the RMBS desk focused primarily on Nomura's trading of bonds composed of prime and alt-A loans. *Id.* at ¶¶ 1-3. The Indictment alleges that, as senior members of the RMBS desk, Shapiro, Gramins and Peters

---

[2] "THE COURT:  You do oppose it or don't oppose it?" MS. CHERRY:  "We would request a stay for third-party documentary evidence."  THE COURT:  "That is something you should all talk about.  I have an open mind about that."  Tr. (Draft) Conference 10.19.15 Civil Case 10:18-21.

defrauded Nomura's customers by fraudulently inflating the purchase price at which Nomura could buy an RMBS bond to induce their victim-customers to pay a higher price for the bond, and by fraudulently deflating the prices at which Nomura could sell a RMBS bond to induce their victim-customers to sell bonds at cheaper prices, causing Nomura and the three defendants to profit illegally. *Id.* at ¶¶ 34-35. Shapiro, Gramins and Peters are also alleged to have created fictitious third parties in an effort to increase their profits, and colluded with at least one outside client to deceptively broker trades on their behalf. *Id.* In addition, the Indictment alleges that Shapiro, Gramins and Peters trained their subordinates to lie to customers, provided them with the language to use in deceiving customers, and encouraged them to engage in the practice. *Id.* at ¶¶ 4, 35c.

Five days after the grand jury returned the Indictment, the Securities and Exchange Commission ("SEC") filed the complaint in the instant case. The SEC's complaint is based upon the same fraudulent conduct that is charged in the Indictment and involves the same individual coconspirators, and many of the same witnesses and victims.

The Honorable Robert N. Chatigny is presiding over the Criminal Case. The Government requested a trial date of Spring 2016. Notably, the defendants requested a trial date of October 2016, <u>more than a year after the Indictment was returned</u>. The Court granted the defendants' request, setting October 18, 2016 for jury selection. The Government believes that the SEC and the defendants have agreed to a trial date commencing several months after the conclusion of the criminal trial.

## II.     There Should be a Limited Stay of Discovery

The Court has the power to grant the requested stay and should do so because: (1) a stay of third party discovery will not prejudice the civil case, (2) a stay is in the public and Government's interest, (3) a stay is in the interest of third party victims and witnesses, (4) a stay promotes judicial economy and is in the Court's interest and (5) a stay maintains the "level playing field" promoted by the discovery rules.

### 1.     The Court Has the Authority to Stay Third Party Discovery

This Court has the power to stay discovery. "Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution." *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970). In order to determine whether a stay is warranted, courts balance relevant factors on a case-by-case basis with the primary goal of avoiding prejudice. *Volmar Dist., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). District courts in the Second Circuit look to the following factors to make this determination:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigants as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the

courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest.

*Id.* The court also considers "the extent to which the issues in the criminal case overlap with those in the civil case . . . [and] the status of the criminal case, including whether the defendants have been indicted." *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 74 (W.D.N.Y. Sept. 12, 2003). In weighing these interests in this case, the balance tips in favor of staying non-party discovery; any purported prejudice claimed by the defendants is outweighed by the prejudice to the Government, the SEC, the victims, the public and the Court; it is also belied by the defendants' claim that "at least a year from indictment to trial" is necessary in the criminal matter "because [the defendants] genuinely believe that's the time it will take to get ready." Tr. Status Con. 10.7.15 Criminal Case 14:20-24.

## 2.      There is No Prejudice to the Parties in the Civil Case

Defendants will not be prejudiced if the Court grants the limited stay requested by the Government. First, the Government seeks to stay only third party discovery. Discovery deadlines and the trial date are not yet set, and the trial in this case will most likely proceed months (if at all) after the criminal trial, which allows the defendants ample time to conduct any remaining discovery. *See Chestman*, 861 F.2d at 49 (the "defense of the civil case is . . . not affected" by a stay because civil trial preparation can continue once the stay is lifted). Contrary to the defendants' assertion that the Government is "deny[ing] defendants a chance to respond," Defendants' Letter dated Oct. 7, 2015 [doc. # 25], the Government seeks a limited stay only to preserve the integrity of the criminal process. Second, the defendants will receive voluminous discovery from the SEC (and have already received vast discovery from the Government), which will help them prepare their defense.

Perhaps most importantly, the delay will not impact the defendants' supposed desire to "swiftly" respond to the allegations. Defendants have requested until the end of January 2016 to file their Motion to Dismiss in the Civil Case and their pre-trial motions in the Criminal Case. Defendants also requested and have been granted a trial date in the Criminal Case of October 2016, which means that the civil case will commence several months after that, most likely in 2017. Defendants claim that they seek "the opportunity to mount a swift and meaningful defense." On the other hand, the defendants are incomprehensibly willing to wait five months after the filing of the complaint and return of the Indictment before contesting their validity, more than a year after the Indictment to defend the allegations at a public trial, and then several months after the criminal trial concludes before responding to the substantive allegations in the SEC complaint. Staying third party discovery until the conclusion of the criminal trial does not prejudice the defendants' ability to defend against the allegations in the complaint in 2017. Indeed, it allows the defendants to use the time they claimed as necessary to prepare adequately for the Criminal Case.

Furthermore, a stay in civil discovery may actually benefit the defendants. During a civil trial, defendants and witnesses in this case, if involved in a pending criminal investigation, may feel obligated to assert their rights pursuant to the Fifth Amendment. Should the defendants

assert their Fifth Amendment rights in the civil action to protect their rights in the criminal trial, the civil court would be permitted to take an adverse inference from such an assertion, to the detriment of the defendants.

The plaintiff's interest in an expeditious resolution of its case will also not be unduly compromised by a limited stay of the civil proceeding.  The SEC is not being asked to forego its civil claims, but merely to hold them in abeyance to permit conclusion of the criminal case.  A stay would not unduly impair the SEC's ability to litigate the civil case because the SEC would still be able to develop its evidence and witness testimony, and a stay would likely streamline the SEC's efforts because legal and factual issues may be narrowed or resolved by the Criminal Case.

### 3.     The Public and the Government Have an Interest in Staying the Civil Case

The public's interest in the investigation and criminal prosecution of federal criminal law would be protected by the limited stay requested by the Government.  The public's "interest in the integrity of the criminal case is entitled to precedence over the civil litigant." *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. Sept. 12, 2003).  As the Fifth Circuit Court of Appeals has noted, when considering motions for a stay of a civil suit pending the disposition of a related criminal matter, a judge should give "substantial weight" to the public's interest in law enforcement over a civil litigant's right to the prompt determination of his civil claims or liabilities.  *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962); *see In re Ivan F. Boesky Sec. Litig.*, 128 F.R.D. 47, 49 (S.D.N.Y. 1989) (quoting *Campbell* in explaining the public's interest in the criminal case is entitled to precedence over civil litigation).

Courts have, at times, expressed skepticism about staying civil discovery when it appears that the Government is simply staying discovery to gain the tactical advantage of not turning over discovery in a civil matter that would not be discoverable in a criminal matter. *See e.g. SEC v. Oakford Corp.*, 181 F.R.D. 269, 272–73 (S.D.N.Y. 1998). That is not a concern here. In this case, the Government has provided the defendants with robust early discovery, which includes the grand jury transcripts and memoranda of interview of all witnesses that have been interviewed by the Government or testified in the grand jury.  These are materials that the defendants are not yet entitled to in either case under *any* rules – civil or criminal.

However, having a full-blown pre-trial in another venue significantly inhibits the Government's ability to prepare for the actual trial and wastes time and public resources.  The Government believes that a one-sided interrogation outside the supervision of the Court hearing the Criminal Case, in a proceeding to which the Government is not a party, is unfairly prejudicial to the Government and the public's interest.  Such a format may result in confusing and inconsistent witness testimony resulting from artful questioning - questioning that the Government would be unable to object to and unable to rehabilitate on the record.

Requests for third party discovery by the civil litigants will also embroil the Government in needless litigation, and force the Government to monitor the Civil Case, to which it is not a party, and return to this Court to continually litigate discovery issues.  *See Oakford*, 181. F.R.D.

at 272 ("To the extent that [defendant's discovery demands] threaten the integrity of the criminal case . . . they are . . . subject to being narrowed or quashed upon an appropriate showing by the United States Attorney.").

In sum, all defendants gain through third party discovery in the Civil Case at this time is the tactical advantage. Almost all discovery that the defendants seek is available through the Criminal Case – a case the defendants have postponed because they need a whole year to prepare for it. They may seek their additional discovery through the Criminal Case. If, after the Criminal Case has been litigated, they need additional third party discovery, they can seek it then. Simply put, there is no valid basis for them to request discovery of third party witnesses in the Criminal Case through the Civil Case except to distract and delay the work of the criminal prosecutors.

### 4.    It is in the Court's Interest to Order a Stay

"Judicial efficiency also weighs in favor of granting a stay" because the "resolution of the criminal case may increase the probability of settlement in the civil case due to the high standard of proof required in a criminal prosecution," *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mechanical Inc.*, 886 F.Supp. 1134, 1140 (S.D.N.Y. 1995), thereby saving the Court from using resources unnecessarily to manage discovery litigation brought by both the Government and the victims. Even if the Criminal Case does not nullify the need for the Civil Case to proceed, the parallel criminal prosecution will likely save the Court time regarding duplicative issues of fact. *See SEC v. Contorinis*, 2012 WL 512626 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."). Therefore, the interests of judicial economy would be served by the limited stay requested by the Government.

### 5.    It is in the Interest of Third Party Victims and Witnesses to Order a Stay

The stay proposed by the Government seeks to protect the interest of third party victims and witnesses. There are virtually no victims whose rights will be vindicated in the Civil Case, whose interests will not simultaneously be vindicated by a successful resolution of the Criminal Case. In short, there is no outside party who would prefer to see the Civil Case proceed simultaneously with the Criminal Case. The defendants seek to unnecessarily subject outside third parties to duplicative testimony in depositions in the Civil Case and trial in the Criminal Case. They intend to subpoena documents from the victims, outside the purview of the presiding judge in the Criminal Case, imposing immense costs on the victims and witnesses in terms of both time and money. Discovery in the Civil Case will only burden third party victims and witnesses. The Court can potentially spare the victims and witnesses this burden by staying third party discovery. The Government requests that it do so.

Under the Crime-Victim Rights Act, the Government "may assert the rights" of victims in criminal matters. 18 U.S.C. § 3771(d)(1). In seeking to intervene in the Civil Case in the interest of the Criminal Case, the government seeks to protect the rights of those victims. The victims have a right to "be reasonably protected from the accused," to have criminal "proceeding

free from unreasonable delay," and "to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. 3771(a)(1)-(8).  Document subpoenas and disposition testimony are not, necessarily, unreasonable contact from the defendants. Similarly, they do not necessarily interfere with the victims' dignity or privacy.  However, to the extent that these are concerns of the criminal law, they should be weighed and resolved by the judge overseeing the Criminal Case.

**6.      The Interest in Creating a  "Level Playing Field" in Preparation for Trial Weighs in Favor of a Stay**

At this time, the Government and the defense are on equal footing in the Criminal Case, just as the SEC and the defendants are subject to the same procedures in the Civil Case. However, allowing third party discovery to continue in the Civil Case while the Criminal Case is pending gives the defendants an improper tactical advantage in the Criminal Case by permitting them to take depositions and obtain documents to which the criminal rules do not entitle them to and then to use that discovery to defend the criminal case. It also raises the prospect that the defendants use the specter of the criminal trial to evade their concomitant discovery obligations in the Civil Case by avoiding being deposed themselves. This creates an imbalance that both the criminal and civil rules seek to vitiate.

The Government's concern that defendants will abuse the civil discovery process is not speculative.  The defendants have made clear that although they intend to use this discovery to attack the Criminal Case, they prefer to obtain such discovery through the civil discovery process rather than requesting subpoenas pursuant to Rule 17(c) from the criminal court. ("[W]e would anticipate issuing subpoenas in that case on the civil -- under the civil rules as well. So that may determine somewhat what Your Honor receives from us by way of Rule 17 application." Tr. Status Con. 10.7.15 Criminal Case 20:18-22.). If the Court allows this to proceed, it is subjecting customer-victims to potentially unnecessary financial and time costs, and promoting a discovery process in which the defendants can, <u>without any of its own reciprocal obligations</u>, disproportionately externalize the costs of discovery to non-parties.

In fact, in *SEC v. Chakrapani*, 2005 WL 2837462 (S.D.N.Y. Oct. 28, 2005), Judge Sullivan specifically notes such a request may alter the balance of factors toward a limited stay of discovery.  After denying the government's request for a limited stay of discovery, Judge Sullivan states that "if [defendant or witness] invoke their Fifth Amendment privileges not to participate in civil the discovery, the Court's analysis regarding the propriety of a discovery stay might well be altered.  In other words, the Court, the public, and non-parties—namely, alleged victims . . .—have a clear interest in open and full discovery in this matter.  To the extent that process is compromised by the legitimate invocation of constitutional privileges during discovery, the balance of interests could turn in favor of a discovery stay pending completion of [defendant's] criminal trial." *Chakrapani* at *11.  *See also SEC v. Saad*, 229 F.R.D. 90, 91 (S.D.N.Y. 2005) (referring to *Oakford*, 181 F.R.D. 269 (S.D.N.Y. 1998) which denied the Government's blanket stay of discovery in the parallel civil case but staying depositions of six defendants in the civil case, two of whom are defendants and four of whom are cooperating witnesses in the criminal case finding that "until the criminal case is resolved, there is a high

likelihood that invocations of the Fifth Amendment privilege will play havoc with the orderly conduct of all six depositions.").

In this case, defense counsel has requested that the Court allow all civil discovery except for depositions of the defendants so they can avoid having to assert their Fifth Amendment privilege.  If the Court were to allow all other civil discovery to proceed except depositions of the defendants, an unbalanced discovery process would be produced.  "Placing the parties on a level playing field . . . is the very purpose for which civil discovery exists."  *SEC v. Rajaratnam*, 622 F.3d 159, 182 (2d Cir. 2010).  The discovery schedule proposed by defendants would essentially protect the defendants, while burdening their victims, the Government, the SEC and the Court.  The defendants should not be permitted to utilize the broad discovery rules to collect information about the civil and criminal case against them, while refusing to participate in reciprocal discovery requests.

### 7.    The Government and the Securities and Exchange Commission Must Not Be Penalized for Carrying Out Their Respective Mandates

Finally, a limited stay of third party discovery in the Civil Case should not be denied because the Government and the SEC have brought parallel proceedings against the defendants. *See* Defendants' Letter dated Oct. 7, 2015 [doc. # 25].  The Department of Justice and the SEC are separate agencies with separate mandates and to suggest that the SEC should not pursue actions against those with criminal exposure is indefensible.  "Should the SEC forego civil enforcement proceedings in deference to criminal prosecution, numerous violations would become time-barred during the pendency of the criminal case. . . .  Accordingly, the SEC was obligated to pursue civil violations expeditiously, independent of the criminal charges."  *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1071 (C.D. Cal. 2008) (rejecting the contention that if the government was concerned about protecting the legitimacy of the criminal process, it should not have pursued the civil case). This outcome serves no public interest.

Rather, this Court can construct a case management plan that safeguards the integrity of the criminal trial process, prevents the Government from being distracted by the Civil Case, protects the interests of third party victims and witnesses and gives the defendants the year of preparation they need to prepare for the Criminal Case.  The Government has already taken the first step in addressing the defendants' discovery concerns by exceeding its discovery obligations in the Criminal Case.  The defendants can now seek discovery from the SEC.  However, until the Criminal Case is resolved, the Government respectfully requests that all third party discovery be routed through the Criminal Case and under Judge Chatigny's supervision.

8

**III.** **Conclusion**

      For the foregoing reasons, the Government asks the Court for a limited stay of discovery in the above-captioned case.

<div style="margin-left: 40%;">

Respectfully Submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT
/s/
HEATHER L. CHERRY
LIAM BRENNAN
ASSISTANT U.S. ATTORNEYS
Federal Bar No. phv07037
157 Church Street
New Haven, CT 06510
(203) 821-3719
heather.cherry@usdoj.gov

</div>

cc: All counsel of record