UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                       Plaintiff,

          v.

ROSS B. SHAPIRO, MICHAEL A. GRAMINS, AND TYLER G. PETERS,

                       Defendants.

No. 1:15-cv-07045-RMB-RWL

**ORAL ARGUMENT REQUESTED**

---

**DEFENDANT TYLER PETERS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT**

                       ALSTON & BIRD LLP
                       Brett D. Jaffe
                       Joseph G. Tully
                       David C. Wohlstadter
                       Alston & Bird LLP
                       90 Park Avenue
                       New York, New York 10016
                       Tel:  212-210-9400

                       *Attorneys for Tyler Peters*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................... 1

    I.    THE COMPLAINT'S CONCLUSORY ALLEGATIONS AS TO UNIDENTIFIED "OTHER TRADES" FAIL TO COMPLY WITH RULE 9(B)'S HEIGHTENED PLEADING STANDARD ...................................................................................................... 1

    II.    THE COMPLAINT FAILS TO PLEAD SECURITIES FRAUD WITH RESPECT TO THE 2011 TRADE AND THE 2012 TRADE .................................................................. 4

        A.    The Complaint Does Not Plead A Material Misstatement ......................... 4

        B.    The Complaint Fails to Allege That Peters Acted With Scienter .............. 7

    III.    SCHEME LIABILITY CANNOT BE PREMISED ON MISSTATEMENTS ............................. 9

    IV.    PETERS DID NOT OBTAIN MONEY OR PROPERTY UNDER 17(A)(2) .......................... 9

    V.    DISMISSAL SHOULD BE WITH PREJUDICE ................................................................ 10

CONCLUSION ............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases**                                                         **Page(s)**

*In re Alstom SA*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005) ............................................................................. 9

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ........................................................................................................ 4

*Billard v. Rockwell Int'l Corp.*,
   683 F.2d 51 (2d Cir. 1982) ............................................................................................ 10

*In re Comput. Assocs. Class Action Sec. Litig.*,
   75 F. Supp. 2d 68 (E.D.N.Y. 1999) ................................................................................ 2

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ........................................................................................ 5, 7

*Fernandez v. UBS AG*,
   222 F. Supp. 3d 358 (S.D.N.Y. 2016) ............................................................................ 3

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir. 2000) ........................................................................................... 6

*Janus Capital Grp. Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ........................................................................................................ 9

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005) ........................................................................................... 9

*Loreley Financing (Jersey) No.3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ....................................................................................... 2, 3

*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986) ........................................................................................ 3, 10

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   704 F. Supp. 2d 378 (S.D.N.Y. 2010) ............................................................................ 2

*In re MRU Holdings*,
   769 F. Supp. 2d 500 (S.D.N.Y. 2011) ............................................................................ 3

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ........................................................................................... 1

*Ruffolo v. Oppenheimer & Co.*,
   987 F.2d 129 (2d Cir. 1993) ......................................................................................... 10

*SEC v. Espuelas*,
    579 F. Supp. 2d 461 (S.D.N.Y. 2008) .................................................................................... 5

*SEC v. Goble*,
    682 F.3d 934 (11th Cir. 2012) ............................................................................................... 6

*SEC v. Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011) .................................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................................... 8

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ............................................................................................................... 4

*United States v. Litvak*,
    808 F.3d 160 (2016) .......................................................................................................... 4, 6

*United States v. Shapiro*,
    3:15-cr-00155 (D. Conn.) ...................................................................................................... 3

*United States v. Weimert*,
    819 F.3d 351 (7th Cir. 2016) ............................................................................................. 6, 7

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................................................ 1, 2, 3

Defendant Peters submits this memorandum in further support of his Motion to Dismiss.[1]

## PRELIMINARY STATEMENT

The SEC's Memorandum in Opposition (the "Opposition Brief") does little to defend the fundamentally misguided and legally flawed Complaint. Indeed, two points are absolutely clear:

*First*, all fraud claims related to trades not identified in the Complaint should be dismissed outright. Contrary to the SEC's assertions, "pleading by example" is not permitted in this Circuit and there is nothing about the facts of this case to relieve the SEC of the basic, fundamental obligation to plead fraud with particularity as Rule 9(b) requires.

*Second*, for the two transactions the Complaint actually identifies, the SEC offers no suitable explanation for its utter failure to satisfy the pleading standards for asserting claims under Sections 10(b) and 17(a). The SEC ignores the black-letter requirements for pleading materiality and scienter, and offers no basis for doing so. The Complaint should be dismissed with prejudice.

## ARGUMENT

**I.  THE COMPLAINT'S CONCLUSORY ALLEGATIONS AS TO UNIDENTIFIED "OTHER TRADES" FAIL TO COMPLY WITH RULE 9(B)'S HEIGHTENED PLEADING STANDARD**

The SEC concedes that Rule 9(b) governs the allegations against Peters. Opp. Br. 8. Thus, the parties agree that the Complaint must specify: (i) the fraudulent statements, (ii) the speaker, (iii) where and when the statements were made, and (iv) why the statements were fraudulent. *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)). The Complaint does not come close.

The SEC identifies only two allegedly fraudulent trades involving Peters (characterized by the SEC as "illustrative examples") and otherwise broadly alleges that Peters engaged in fraud over several years, "on dozens of occasions," without offering any identifying information or

---

[1] Capitalized terms not defined herein have the same meaning as in Peters' Motion to Dismiss.

factual details about those other trades. Peters' Mot. 9-11. But this Circuit does not permit "pleading by example," except for scheme liability claims when the defendant has exclusive control of the facts related to the alleged fraud. *See id.* 10-11; *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 389 (S.D.N.Y. 2010) ("courts should not require a plaintiff to plead in elaborate detail acts that are within the exclusive knowledge of the defendant"). Here, the opposite is true: as discussed below (*see infra* § III), the SEC solely alleges misstatement claims; there is no scheme liability claim here at all. Moreover, the SEC has exclusive control of the facts underlying its misstatements case; indeed, the SEC admits it gleaned the "illustrative examples" from "hundreds of pages of Bloomberg chats, email communications, and the like" that it possessed at the time of filing. Opp. Br. 11, n.3.

The SEC argues that the cases Peters cites—reiterating the black-letter law that this Circuit precludes pleading by example—may be distinguished, as they involved "a wide array of defendants in different corporate roles" who stood "accused of engaging in various acts that constitute a complex fraud." Opp. Br. 12. In other words, the SEC argues that courts require more specificity in complex cases. The opposite is true: courts relax Rule 9(b)'s standard for complex frauds if the plaintiff could not have known the facts necessary to plead with specificity. *See In re Comput. Assocs. Class Action Sec. Litig.*, 75 F. Supp. 2d 68, 73 (E.D.N.Y. 1999) (relaxing pleading standard where "Plaintiffs allege such a widespread fraudulent practice, that if true, . . . is the type of information peculiarly within the defendants' control."). Here, that reasoning is irrelevant: this "is not a complicated case," according to the SEC (Opp. Br. 9) and the relevant facts (collected during the SEC's multi-year investigation) were readily available to the SEC.

The SEC's authority is inapposite. *Loreley Financing (Jersey) No.3 Ltd. v. Wells Fargo Sec., LLC*, the primary case on which the SEC relies, does not even address pleading by example.

2

*See* 797 F.3d 160, 172-73 (2d Cir. 2015). In that case, the plaintiff identified all of the alleged misstatements. *Id*. The issue was whether the plaintiff could attribute misstatements to a group rather than a specific entity; that "group pleading" question has no bearing here. *Id.* The SEC's remaining authority *rejected* the exact type of conclusory pleading that the SEC has attempted here. For example, in *Luce v. Edelstein,* the Second Circuit rejected allegations that the defendants "continually misrepresented" and concealed from investors certain material facts about an investment, as "entirely conclusory and unsupported by assertions of facts" because they failed "to specify the time, place, speaker, and *sometimes even the content of the alleged misrepresentations*[.]" 802 F.2d 49, 54 (2d Cir. 1986) (emphasis added). The Second Circuit noted the pleading failures occurred even though the allegations concerned "matters of which plaintiffs should have knowledge." *Id.* at 54. That is precisely the case here.[2]

      Finally, the SEC's mere description of the "means and methods used by the defendants" not only fails to meet the standard of Rule 9(b) but would severely prejudice Peters' defense of this case. As the SEC notes, "hundreds of pages" of documents relate to Peters' trading activity during the years purportedly covered by the Complaint. Without identifying *specific* misstatements, Peters is left to guess as to which of his thousands of statements is the material misstatement that the SEC purports to use as the basis of a securities fraud claim against him. Indeed, even identifying the alleged trade date and bond (as the SEC purports to have done in its February 2, 2016 letter) but without identifying the misstatement, does not cure the problem, and Peters is left to defend a moving target. The law, and fundamental fairness, demand more.[3]

---

[2] The SEC's other authority also rejected generalized pleading. *Fernandez v. UBS AG*, 222 F. Supp. 3d 358 (S.D.N.Y. 2016); *In re MRU Holdings*, 769 F. Supp. 2d 500 (S.D.N.Y. 2011)).

[3] This is not theoretical: at the criminal trial, the DOJ struggled to identify the materially misleading statement in one trade, reversing course three times. *See* Supp. Jaffe Decl., Ex. A (Letter to Court, *US v. Shapiro*, 3:15-cr-00155 (D. Conn. filed May 15, 2017) at 2, ECF No. 386).

3

## II. THE COMPLAINT FAILS TO PLEAD SECURITIES FRAUD WITH RESPECT TO THE 2011 TRADE AND THE 2012 TRADE

### A. The Complaint Does Not Plead A Material Misstatement

*Allegations Concerning How "Many Customers" Would Have Acted Are Insufficient.* A statement is "material" if a "substantial likelihood" exists that the statement "would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). The Complaint ignores that standard altogether, instead assuming that Peters' misstatements were material because "*many customers* would have conducted their negotiations differently," if they had known Nomura's acquisition prices. Peters' Mot. 12-14 (quoting Compl. ¶ 30) (emphasis added).

The SEC never addresses its failure to allege that even a majority of investors would have conducted negotiations differently if aware of the alleged misstatements. Peters' Mot. 12-14. Instead, the SEC retorts that "there is nothing remarkable about the proposition that price is a factor in virtually every investment decision[.]" Opp. Br. 13. That rather obvious point misses the mark. The alleged misstatements here do not concern the price the purchasers paid—the Complaint makes clear that all of Nomura's customers got the bond they wanted at the price they agreed to pay. *E.g.*, Compl. ¶ 47. Instead, the alleged misstatements concerned only Nomura's acquisition price, and the Complaint fails to allege any specific facts about how misstatements about Nomura's acquisition costs "significantly altered the total mix of information" available to the "*reasonable investor*." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (emphasis added).[4]

---

[4] *United States v. Litvak*, 808 F.3d 160 (2016), did not, as the SEC suggests, reject Peters' materiality arguments. Opp. Br. 13. There, the Second Circuit merely held that, based on trial "testimony from several representatives of Litvak's counterparties that his misrepresentations were 'important' to them," a jury could have found Litvak's misrepresentations material. 808 F.3d. at 175-76. Here, the SEC alleges nothing about the relative importance of the alleged misstatements.

4

*The Complaint Fails to Allege Customers Could Have Received Better Prices From Nomura***.**  The SEC also never addresses the Complaint's failure to plead that, absent the alleged fraudulent statement, any purchaser would have received a better price from Nomura.  Peters' Mot. 14-15.  Instead, the SEC parrots the Complaint's speculation about how purchasers might have altered their negotiation strategy if armed with knowledge of Nomura's true acquisition costs.  Opp. Br. 14-15.  The SEC theorizes, it seems, that with full knowledge of Nomura's acquisition cost, customers would have negotiated for a better price from Nomura—*i.e.*, they could have turned the screws on Peters.  But that is just rank speculation, and cannot support a claim; the Complaint does not allege facts to support the conclusion that any purchaser would have acquired the bonds for less than they agreed to pay.[5]  *See SEC v. Espuelas*, 579 F. Supp. 2d 461, 469 (S.D.N.Y. 2008) (SEC cannot "base claims of fraud on speculation and conclusory allegations").

*The Alleged Misstatements are Quantitatively Immaterial.* The relatively small amounts of "additional" revenue the SEC attributes to the alleged fraud in the 2011 Trade and the 2012 Trade (3.25% and 0.22% of the total transaction value) fall well below the levels courts deem material as a matter of law.  *See* Peters' Mot. 15-19; *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197-98, 204 (2d Cir. 2009) (noting 5% is a "good starting place for assessing the materiality of alleged misstatement").  The SEC does not dispute Peters' quantitative assessment of materiality, except in two parentheticals.  In one, the

---

[5] In fact, the 2011 Trade suggests just the opposite.  The SEC contends that, in the 2011 Trade, Peters "falsely claimed that the bond was being offered at 75-24" and that, if the purchaser knew the true price, "it is reasonable to infer that such knowledge would have been highly material" to the purchaser's negotiation.  Opp. Br. 14.  In this trade, however, the purchaser showed no interest in Nomura's acquisition price, as shown by the fact that the parties did not negotiate Nomura's compensation (*i.e.*, adding some amount to Nomura's acquisition cost); instead, the purchaser countered the 75-24 offer with a bid to pay Nomura 74-24, and Peters agreed to that price.  This hardly suggests that Nomura's acquisition price was material to the purchaser.

5

SEC characterizes the holding of *Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000), as "rejecting numerical or percentage threshold to determine materiality." Opp. Br. 16. In fact, *Ganino* did just the opposite, instructing that misstatements are material where they are "substantial amounts, both in absolute terms and as percentages." *See* 228 F.3d at 165-66. Similarly, the SEC describes the Second Circuit in *Litvak* as "rejecting immateriality argument despite fact that Litvak's lies involved fraudulent profits of 1% or less on certain bond trades." Opp. Br. 16. But, in *Litvak*, the court never examined materiality on a percentage basis; instead, it merely distinguished a case holding that the receipt of a dollar or two per trade was not material. *See Litvak*, 808 F.3d at 176-77 (citing *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539 (2d Cir. 1996)).

Rather than addressing the issue, the SEC runs from any quantitative assessment. The SEC contends that the purchaser would have judged the "brazenness" of the alleged lie to be material, "particularly in doing business with Nomura on a going-forward basis." Opp. Br. 16. Of course, the Complaint alleges nothing about brazenness, and this argument merely seeks to broaden the materiality standard, which concerns a reasonable investors' assessment of its *present* investment decision, not its decision making on hypothetical *future* transactions. *See SEC v. Goble*, 682 F.3d 934, 943-44 (11th Cir. 2012) (rejecting argument that "had investors known about the misrepresentation they may have chosen a different broker-dealer to process their transactions.").

***A Third Party's Negotiating Position Is Immaterial as a Matter of Law.*** The SEC makes no effort to rebut Peters' argument that not one court in this Circuit has held that a misstatement about a third-party's negotiating position constitutes a material misstatement. Peters' Mot. 15-16. The SEC tries to distinguish the holding in *Weimert*—that misstatements about a third-party's negotiating position are immaterial as a matter of law—by characterizing the misstatements in

6

*Weimert* as not "objectively false factual statements." 819 F.3d 351, 353 (7th Cir. 2016). That is not true. In *Weimert*, the defendant plainly lied to the seller and purchaser about a precondition to a transaction; he convinced both sides that the other party "would not close the deal if [the defendant] were not included as a minority partner." *Id.* at 353. This statement was "objectively false": the defendant claimed a precondition existed and it did not. *Weimert* applies here. *Id.* at 357 ("To state the obvious, [buyers and sellers] will often try to mislead the other party about the prices and terms they are willing to accept.").

### B. The Complaint Fails to Allege That Peters Acted With Scienter

*The Complaint Does Not Allege an Actionable Motive.* The SEC contends that the motive the Complaint ascribes to Peters is "distinguishable from the general incentive that corporate officers have 'for the corporation to appear profitable and the desire to keep the stock prices high.'" Opp. Br. 19 (comparing to *ECA*, 553 F.3d at 198). But the Complaint's motive allegations are exactly the same as those that *ECA* and other cases in this Circuit have rejected. In *ECA*, the plaintiff alleged not only a motive to inflate the company's stock price but a motive to increase the defendant's incentive compensation, as the defendants "*received bonuses based on corporate earnings*[.]" *ECA*, 553 F.3d at 201 (emphasis added). As the SEC acknowledges, the Complaint here takes the exact same approach: "the Complaint alleges that [Peters'] financial compensation was tied to both his personal performance and the performance of the RMBS desk overall." Opp. Br. 19. These allegations are plainly insufficient. *See ECA*, at 201 ("Incentive compensation can hardly be the basis on which an allegation of fraud is predicated.") (quotation omitted).

Moreover, any "additional" profit was received by *Nomura*, not Peters; there is no allegation to suggest that Peters tangibly benefited from any alleged misstatements. As to Jonathan Raiff's trial testimony (Peters' Mot. 21, n.12), the SEC astoundingly asserts there are credibility issues with this *government* witness. Opp. Br. 19, n.5. And no "context" is needed to clarify his

7

unequivocal statement that a revenue change of $6 million in a single year would not affect a trader's compensation.[6]  The SEC's alleged "motive" simply makes no sense.

***The Complaint Fails to Allege Conscious Misbehavior or Recklessness.***  Because Nomura's acquisition cost did not need to be disclosed, it was reasonable to infer that Peters did not believe that Nomura's acquisition cost was material.  As such, we cannot infer Peters' "conscious misbehavior or recklessness."  Peters' Mot. 22.  But the SEC does not address this point at all, instead, trumpeting the refrain that "if information is material, it must be disclosed truthfully."  Opp. Br. 20.  The SEC simply has not plead facts from which "the inference of scienter [is] cogent and at least as compelling as any [] opposing inference[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007).

Nor does the SEC address that it is reasonable to infer that until an RMBS trader at a different bank (Jesse Litvak) was indicted, Peters would have had no idea that Nomura's acquisition price or a third party's negotiating position was potentially material.  Indeed, it is undisputed that until Litvak's indictment, no fraud case—criminal or civil—had been predicated on the SEC's current theory.  Dodging the issue, the SEC argues that, because Litvak was convicted, his indictment could not have been the first signal to Peters that his long-time trading practices may be construed as illegal.  Opp. Br. 21.  But this ignores that Litvak never argued (to a jury or on appeal) that he lacked the intent to deceive as to a material matter (as Peters does here).  The SEC also ignores the critical fact that a jury *acquitted* Peters after trial, and, as such, Litvak's eventual conviction cannot illuminate Peters' state of mind prior to the time of Litvak's indictment.

---

[6] There is no allegation that the "additional profit" from Peters' trades is anywhere close to $6 million.  Indeed, the "additional profit" for the 2011 Trade and 2012 Trade—the ones the SEC chose to identify—totals $119,700, and the SEC's letter points to only 9 other trades by Peters.

**III.     SCHEME LIABILITY CANNOT BE PREMISED ON MISSTATEMENTS**

In light of *Janus Capital Grp. Inc. v. First Derivative Traders*, 564 U.S. 135, 143 (2011), Peters cannot be held liable for the alleged material misstatements of others when there is no allegation that he had "ultimate control" of their statements.[7] Opp. Br. 22-23. Changing course, the SEC now argues that claims based on his alleged role as a supervisor are not material-misstatement claims, but scheme-liability claims, also known as market manipulation claims. Opp. Br. 22. The Second Circuit has held that where, as here, "the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim[.]" *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 177 (2d Cir. 2005).

Indeed, the SEC has not alleged "an inherently deceptive act that is distinct from an alleged misstatement." *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011). There is nothing inherently deceptive about instructing a co-worker to make misstatements; the only alleged deception would be the co-worker's future misstatements. *See id.* at 344 (dismissing scheme liability claims where conduct deemed "deceptive only because of [defendants'] subsequent public misrepresentations"); *In re Alstom SA*, 406 F. Supp. 2d 433, 476 (S.D.N.Y. 2005) (scheme liability not pled "by pointing to fraudulent statements and claiming that the defendants were part of a scheme to make those statements[.]"). Critically, the SEC failed to allege a single fact about any fraudulent scheme: the Complaint contains *no* details on who Peters directed, how he directed them, or what misstatements were made. The SEC's scheme liability claims cannot survive.

**IV.     PETERS DID NOT OBTAIN MONEY OR PROPERTY UNDER 17(A)(2)**

Earning money for an employer does not establish that a defendant "obtained money or property." Peters' Mot. 25. The SEC argues that there was a "direct" relationship between Peters'

---

[7] The SEC argues "the majority of courts . . . have concluded, *Janus* does not apply to . . . Section 17(a)." Opp. Br. 22. This argument is moot, however, as the SEC clarified that claims based on Peters alleged role as a supervisor rest on scheme liability, rendering *Janus* inapplicable.

9

compensation and generating revenue for Nomura. Opp. Br. 24. But, actually, the Complaint alleges a complex "variety of qualitative and quantitative factors," that determine Peters' compensation including revenue generation in some unknown capacity. Compl. ¶ 53. There is no basis to infer from those allegations that Peters "obtained money or property" as a result of fraud.

## V.    DISMISSAL SHOULD BE WITH PREJUDICE

In drafting the Complaint, the SEC relied on "hundreds of pages of" documents, obtained by use of the Commission's virtually unfettered subpoena power during a two-year investigation. Opp. Br 11, n.3. As such, the SEC has engaged in an inquiry much more rigorous than "full discovery"; this case is ripe for dismissal with prejudice. *See Luce*, 802 F.2d at 56 ("courts have declined to give a plaintiff an opportunity to replead where . . . he has been afforded full discovery in a related case"); *see also See Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir. 1982) (denying leave to amend securities fraud complaint); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131-32 (2d Cir. 1993) (denying leave to amend securities fraud claim after two years of discovery).

Peters has lived a personal and professional nightmare for nearly 4 years, starting with the SEC's investigation in 2013 through his indictment and simultaneous commencement of this matter. Fortunately, in June 2017, a jury in Hartford, Connecticut acquitted Peters. The SEC has had many chances to amend the Complaint: after the criminal trial, in the wake of the 17-month stay of this case, or even during the briefing of this motion; it has declined to do so. The SEC's theory of liability (like the DOJ's before it) is fundamentally flawed, and the Complaint wholly deficient; Peters should not have to continue to live under the specter of baseless securities fraud accusations while yet another government agency tries once again to get it right. The Complaint should be dismissed with prejudice.

10

## CONCLUSION

For the foregoing reasons and those stated in his opening brief, Peters respectfully requests that the Court dismiss the Complaint with prejudice.

New York, New York
December 15, 2017

>Respectfully submitted,
>
>**ALSTON & BIRD LLP**
>
>By: */s/ Brett D. Jaffe*
>    Brett D. Jaffe
>    Joseph G. Tully
>    David C. Wohlstadter
>    90 Park Avenue
>    New York, NY 10016
>    Telephone: (212) 210-9493
>    Facsimile: (212) 210-9444
>    brett.jaffe@alston.com
>    joe.tully@alston.com
>    david.wohsltadter@alston.com
>
>    *Attorneys for Tyler Peters*