UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                              Plaintiff,

                    v.                                    No. 1:15-cv-07045-RMB-JCF

ROSS B. SHAPIRO, MICHAEL A. GRAMINS,
AND TYLER G. PETERS,

                              Defendants.

---

**DEFENDANT TYLER G. PETERS' MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR RECONSIDERATION**

                    ALSTON & BIRD LLP
                    Brett D. Jaffe
                    Joseph G. Tully
                    David C. Wohlstadter
                    Alston & Bird LLP
                    90 Park Avenue
                    New York, New York 10016
                    Tel:  212-210-9400

                    *Attorneys for Tyler G. Peters*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ........................................................................................................................... 5

    I.    UNDER THE SUPREME COURT'S JANUS STANDARD, MR. PETERS CANNOT BE LIABLE FOR THE THIRD-PARTY MISSTATEMENTS ................................................. 6

    II.    MR. PETERS CANNOT BE LIABLE FOR THE THIRD-PARTY MISSTATEMENTS UNDER A SCHEME-LIABILITY THEORY ................................................................. 8

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Alstom SA*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)...........................................................................5, 8, 9, 10

*In re Beacon Assocs. Litig.*,
818 F. Supp. 2d 697 (S.D.N.Y. 2011).......................................................................................5

*In re Parmalat Sec. Litig.*,
376 F. Supp. 2d 472 (S.D.N.Y. 2005).......................................................................................8

*Janus Capital Grp. Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)............................................................................................... passim

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005)............................................................................................2, 4, 8

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977).......................................................................................................8

*SEC v. Big Apple Consulting USA*,
783 F.3d 786 (11th Cir. 2015).............................................................................................6

*SEC v. Goldstone*,
952 F. Supp. 2d 1060 (D.N.M. 2013).......................................................................................6

*SEC v. Im*,
No. 17-cv-3613 (JPO), 2018 WL 840094 (S.D.N.Y. Feb. 12, 2018).........................................7

*SEC v. Kelly*,
817 F. Supp. 2d 340 (S.D.N.Y. 2011).............................................................................. passim

*SEC v. KPMG LLP*,
412 F. Supp. 2d 349 (S.D.N.Y. 2006).......................................................................................8

*SEC v. Perry*,
No. CV-11-1309, 2012 WL 1959566, at *8 (C.D. Cal. 2012)...................................................6

*SEC v. Stoker*,
865 F. Supp. 2d 457 (S.D.N.Y. 2012).......................................................................................6

STATUTES

15 U.S.C. § 77q(a) .............................................................................................................4

Defendant Tyler G. Peters respectfully submits this memorandum of law in support of his Motion for Reconsideration of the Court's June 4, 2018 Decision & Order (the "Decision"), which denied Mr. Peters' Motion to Dismiss the Complaint (the "Motion to Dismiss" or "Peters' Mot."), to the extent that the Decision failed to consider whether Mr. Peters may be liable for statements made by others in light of the Supreme Court's decision in *Janus Capital Grp. Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).

### PRELIMINARY STATEMENT

The Complaint in this civil action seeks to hold Mr. Peters, a former mortgage bond trader at Nomura Securities International ("Nomura"), liable under Section 10(b) of the 1934 Act and Rule 10b-5, and Section 17(a) of the 1933 Act, for alleged material misstatements made by other traders who sat on the same trading desk as Mr. Peters (the "Third-Party Misstatements"). However, in *Janus Capital Group Inc. v. First Derivative Traders*, the Supreme Court unambiguously held that a defendant could be held liable for misstatements made by third parties only if the defendant exercised "ultimate control" over those statements. 564 U.S. 135, 142-43 (2011). The Complaint does not allege that Mr. Peters exercised the requisite control over the Third-Party Misstatements; indeed, the SEC has never argued that he did. Rather, the SEC asserts that Mr. Peters is liable for the Third-Party Misstatements on a "scheme liability" theory. In other words, the SEC suggests that Mr. Peters may "be found liable for securities fraud for *engaging in conduct* that included, as alleged in the Complaint, 'train[ing], coach[ing], and direct[ing] subordinates to engage in lies and omissions with customers . . . ." SEC Opposition Br. at 22 (Dkt. No. 99) (emphasis added) (quoting Compl. ¶ 51).

Mr. Peters moved to dismiss as to the Third-Party Misstatements on the basis that the Complaint does not adequately plead scheme liability because it does not allege the existence of

any deceptive or fraudulent conduct other than the alleged misstatements themselves. It is well settled in the Second Circuit that misstatements cannot, without allegations of some deceptive conduct, sustain a scheme liability claim. *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 177 (2d Cir. 2005). "Where the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission, courts have routinely rejected the SEC's attempt to bypass the elements necessary to impose 'misstatement' liability under subsection (b) by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'" *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011).

In denying Mr. Peters' Motion to Dismiss, the Court considered neither the impact of the Supreme Court's *Janus* decision, nor whether the Complaint had adequately pled a scheme liability claim. Instead, the Court held that, in light of the fact that the Complaint had adequately pled the existence of two misstatements made by Mr. Peters, it need not consider the question of scheme liability at all. *See* Decision at 16 ("the Court has determined that the SEC has adequately pled misstatement liability adequately . . . , it need not address scheme liability"). Mr. Peters submits that the Court's conclusion in this regard is contrary to controlling Supreme Court and Second Circuit authority. For that reason, Mr. Peters respectfully seeks reconsideration.[1]

<u>**BACKGROUND**</u>

***The Complaint.*** The Complaint alleges that Mr. Peters made, and coached others to make, misstatements that violated the federal securities laws. *See* Compl. ¶¶ 4-5. The allegations concerning those misstatements fall into three general categories. First, the Complaint identifies

---

[1] In his pre-motion letter, dated June 13, 2018, Mr. Peters suggested that he would seek reconsideration to the extent the Court held that the Complaint had pled a securities fraud claim with regard to alleged misstatements not identified in the Complaint. In light of the Court's suggestion at the June 21, 2018 conference that the defense seek from the SEC the factual information necessary to understand exactly which alleged misstatements the SEC seeks to include in this case, Mr. Peters no longer seeks reconsideration of that portion of the Decision.

two trades, by bond name and trade date, and then excerpts the specific misstatements Mr. Peters allegedly made in negotiating those trades.  *See* Compl. ¶¶ 47-48.  Second, the Complaint alleges generally that, in some unidentified number of trades, Mr. Peters made additional misstatements, although the Complaint does not provide any details of those trades or identify any specific misstatements by Mr. Peters.  *See* Compl. ¶¶ 49-50.  Third, the Complaint alleges the existence of the Third-Party Misstatements: that in some other set of unidentified trades, co-workers of Mr. Peters made misstatements, although the Complaint again fails to specify the misstatements the co-workers allegedly made.  *See* Compl. ¶¶ 5, 51.  As to this last category of trades, the Complaint does not seek to attribute the Third-Party Misstatements to Mr. Peters in any way; instead, the Complaint alleges that Mr. Peters "trained coached, and directed subordinates to engage in lies and omissions with customers . . . ."  *See* Compl. ¶ 51.  It is only this third category that is the subject of this Motion for Reconsideration.

***The Motion to Dismiss.***  Mr. Peters moved to dismiss the Complaint (Dkt. No. 97) as a whole, and specifically sought dismissal to the extent the Complaint sought to hold Mr. Peters liable for the Third-Party Misstatements.  Mr. Peters relied on the Supreme Court's decision in *Janus Capital Group Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).  *Janus* stands for the unambiguous proposition that a defendant cannot be liable for securities fraud arising out of misstatements he did not personally make, absent a showing that the defendant exercised control over the statement made by the third party, including its content.  *See Janus*, 564 U.S. at 142-43.

The SEC made no attempt to distinguish *Janus* in its memorandum of law in opposition to the Motion to Dismiss (the "Opposition Brief" or "Opp. Br.") (Dkt. No. 99).  The SEC also made no attempt to assert that Mr. Peters exercised the high degree of control over the Third-Party Misstatements that *Janus* requires, so that the law might attribute these misstatements to him and,

by extension, deem him liable for any fraud his co-workers allegedly committed during trade negotiations.  Instead, the SEC argued that Mr. Peters is liable for the misstatements of others not on a *misstatement* liability theory of securities fraud (Rule 10b-5(b); 15 U.S.C. § 77q(a)(2)) but instead on a scheme liability theory (Rules 10b-5(a) and (c); 15 U.S.C. § 77q(a)(1) and (a)(3)).  Acknowledging the Supreme Court's holding in *Janus*, the SEC asserted that Mr. Peters could "be found liable for securities fraud for ***engaging in conduct*** that included, as alleged in the Complaint, "train[ing], coach[ing], and direct[ing] subordinates to engage in lies and omissions with customers . . . ."  *See* Opp. Br. at 22 (emphasis added).  The SEC cited no precedential authority for this proposition, citing only Section 17(a), generally.  *See id.*

Mr. Peters' Reply Brief noted that the SEC had fully abandoned any argument that it sought to hold Mr. Peters liable for the Third-Party Misstatements under a misstatement theory, and instead relied exclusively on a scheme-liability theory.  *See* Peters' Reply Br. at 9 (Dkt. No. 102).  Mr. Peters asserted, however, that the Complaint failed to adequately plead scheme liability for two reasons.  First, the Second Circuit has held that where, as here, "the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim[.]"  *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 177 (2d Cir. 2005).  Second, the Complaint failed to allege "an inherently deceptive act that is distinct from an alleged misstatement."  *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011).  As Mr. Peters argued, there is nothing inherently deceptive about instructing a co-worker to make misstatements; the only alleged deception would be the co-worker's future misstatements.  *See id.* (dismissing scheme liability claims where conduct deemed "deceptive only because of [defendants'] subsequent public misrepresentations").

**_The Decision._**   This Court issued the Decision on June 4, 2018, denying the Motion to Dismiss.   *See* Dkt. No. 107.   As to whether the Complaint sufficiently pled misstatements, the Court held that the SEC had "sufficiently alleged **_Peters' misstatements_** to Nomura customers in the course of negotiating RMBS trades."   Decision at 8 (emphasis added).   In reaching that conclusion, however, the Decision examined only the two trades specifically identified and attributed to Mr. Peters in the Complaint.   *Id.* at 9.   The Decision did not examine whether, in light of *Janus*, Mr. Peters could be held liable for the Third-Party Misstatements.   Nor did the Decision consider whether, as suggested by the SEC, Mr. Peters could be liable for the Third-Party Misstatements under a scheme liability theory.   Indeed, the Court declined to consider scheme liability at all, holding that because "the Court has determined that the SEC has adequately plead misstatement liability against Peters . . . , it need not address scheme liability."   *Id.* at 16.

**ARGUMENT**

A court may grant a motion for reconsideration to correct a clear error of law.   *See, e.g.*, *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701-02 (S.D.N.Y. 2011).   Mr. Peters respectfully asserts that reconsideration is appropriate here, because the Decision erred in two ways when it failed to assess whether the Complaint adequately pled Mr. Peters' liability for the Third-Party Misstatements.

First, the Court did not consider whether, in light of the standard the Supreme Court established in *Janus*, the Complaint adequately attributed the Third-Party Misstatements to Mr. Peters such that he could be held liable for statements that he did not personally make.   Second, the Court erroneously held (as a result, in part, of the mischaracterization of the holding in *In re Alstom SA*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005)), that it need not address the Third-Party Misstatements under a scheme liability theory because it had determined that the Complaint

5

adequately pled misstatement liability with regard to Mr. Peters' own statements.  In doing so, the Court declined to consider either basis by which Mr. Peters could conceivably be held liable for the conduct of others.

## I.   UNDER THE SUPREME COURT'S *JANUS* STANDARD, MR. PETERS CANNOT BE LIABLE FOR THE THIRD-PARTY MISSTATEMENTS

The Supreme Court held, in *Janus*, that a person may be liable under Section 10(b) for false statements, only if the person was the "maker" of those statements.  *See* 564 U.S. 135, 142 (2011).  A person is the "maker" of a particular statement, the Supreme Court concluded, if the person exercises "ultimate authority over the statement, including its content and whether and how to communicate it."  *Id.*  The Supreme Court explained that, absent "control, a person or entity can merely suggest what to say, not 'make' a statement in its own right."  *Id.*  The Supreme Court evoked the role of the speechwriter, by way of example: "Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it.  And it is the speaker who takes credit – or blame – for what is ultimately said."  *Id.* at 143.  This standard set in *Janus* has been held by courts in this District and others to apply to misstatement claims brought under Section 17(a), as well.  *See, e.g.*, *SEC v. Kelly*, 817 F. Supp. 2d 340, 345 (S.D.N.Y. 2011); *SEC v. Goldstone*, 952 F. Supp. 2d 1060, 1202 (D.N.M. 2013); *SEC v. Perry*, No. CV-11-1309 R, 2012 WL 1959566, at *8 (C.D. Cal. 2012).  *But see SEC v. Big Apple Consulting USA*, 783 F.3d 786, 796 (11th Cir. 2015); *SEC v. Stoker*, 865 F. Supp. 2d 457, 464-66 & n.8 (S.D.N.Y. 2012).

Here, with respect to the Third-Party Misstatements, the Complaint alleges that Mr. Peters "trained, coached, and directed subordinates to engage in lies and omissions with customers . . . ." Compl. ¶ 51.  But, critically, the Complaint makes no attempt to toe the line *Janus* drew: it alleges nothing about what control Mr. Peters exerted over the statements his co-workers made, what the instructions might have been, whether his co-workers felt compelled to comply with such alleged

instructions (as opposed to treating them as mere suggestions), and what specific misstatements the co-workers actually made, so that one might assess whether the SEC has pled a direct connection between the instructions and the actual misstatements.  The Complaint alleges only that Mr. Peters was a "senior trader" at Nomura.  But that description of his role alleges nothing about his scope of responsibility, his authority over subordinates, or any other fact that might suggest Mr. Peters had the ability to control the statements of his co-workers.  Indeed, the fact Mr. Peters did not hold the license required to supervise other employees at Nomura creates a strong inference that he lacked that ability.  For that reason, the Motion to Dismiss asserted that, as to this allegation, the Complaint fails to plead that Mr. Peters made a misstatement, because Supreme Court precedent instructs that Mr. Peters could not be held liable for the alleged material misstatements of others, when there was no allegation that he had "ultimate control" of their statements – an allegation the Complaint totally lacked.  *See* Peters' Mot. 24-25.

The Decision does not address *Janus* at all.  It limits its analysis of whether the Complaint adequately pleads misstatements to a review of the two trades the Complaint directly attributes to Mr. Peters and of the misstatements that Mr. Peters allegedly made during the negotiation of those trades.  The Court points to *SEC v. Im* as precedent for an instance where "the SEC's complaint provided examples of defendant's misrepresentations about the prices at which Nomura had bought securities," and "the court found that the SEC had adequately plead misstatements."  *See* Decision at 9 (citing *SEC v. Im*, No. 17-cv-3613 (JPO), 2018 WL 840094, at *1-3 (S.D.N.Y. Feb. 12, 2018)).  But that holding only goes so far as to implicate Mr. Peters for misstatements he is alleged to have personally made; *Im* did not involve any alleged third-party misstatements at all.  The Decision holds, tellingly, that the "SEC has sufficiently alleged ***Peters' misstatements*** to Nomura customers in the course of negotiating RMBS trades."  Decision at 8 (emphasis added).

It makes no reference to the Third-Party Misstatements, and Mr. Peters' culpability with respect to them.  Under *Janus*, and on the facts pled in the Complaint, Mr. Peters cannot be liable for the Third-Party Misstatements.

## II.    MR. PETERS CANNOT BE LIABLE FOR THE THIRD-PARTY MISSTATEMENTS UNDER A SCHEME-LIABILITY THEORY

The Decision also did not consider whether – as suggested by the SEC – Mr. Peters could be held liable for the Third-Party Misstatements under a scheme liability theory.   Under well-settled Second Circuit authority, he cannot.  *Lentell v. Merrill Lynch & Co.*, 396 F. 3d 161, 177 (2d Cir. 2005).  The SEC cannot circumvent *Janus*'s attribution requirements by pointing to the Third-Party Misstatements and claiming that Mr. Peters was part of a scheme to make those statements.  *See id*.   "Because the core misconduct alleged is in fact a misstatement, it would be improper to impose primary liability . . . by designating the alleged fraud a 'manipulative device' rather than a 'misstatement.'"   *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 378 (S.D.N.Y. 2006).  The scheme liability subsections of Rule 10b-5 "are not a backdoor into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b-5."   *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 503 (S.D.N.Y. 2005).

Nor has the SEC alleged "an inherently deceptive act that is distinct from an alleged misstatement."  *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011); *see also Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977) (deceptive conduct is exemplified in securities markets by "wash sales, matched orders, or rigged practices, that are intended to mislead investors by artificially affecting market activity").  Not a single other such practice is alleged here; the entire basis for liability arises from alleged misstatements to counterparties.  *See Kelly*, 817 F. Supp. 2d at 344 (dismissing scheme liability claims where conduct deemed "deceptive only because of [defendants'] subsequent public misrepresentations"); *In re Alstom SA*, 406 F. Supp. 2d 433, 476

(S.D.N.Y. 2005) (scheme liability not pled "by pointing to fraudulent statements and claiming that the defendants were part of a scheme to make those statements[.]").

In light of this clear authority precluding Mr. Peters' liability for the Third-Party Misstatements under a scheme liability theory, the Court's declination to even consider the question of scheme liability was in error.  The Decision stated that "the Court ha[d] determined that the SEC ha[d] adequately pled misstatement liability against Peters," so that "it need not address scheme liability."  *See* Decision 16.  While this might have been true with regard to the specific and general misstatements the Complaint *actually alleged were made by Mr. Peters*, the Decision did not make any determination about whether the Complaint had adequately plead misstatement liability against Mr. Peters with respect to the Third-Party Misstatements.  As discussed above, *Janus* directly precludes such liability.

It also appears that the Court declined to address whether the Complaint adequately pled scheme liability because it misapplied the holding in *In re Alstom SA*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005).  In the context in which the Decision cites *Alstom*, it would suggest that *Alstom* stands for the proposition that, so long as a complaint pleads one or two misstatements attributed to a defendant, the Court need not consider whether the defendant may be liable – under a scheme liability theory or otherwise – for alleged misstatements *not* made by the defendant.  *Alstom* stands, in fact, for the exact opposite proposition.

The complaint in *Alstom* – like the Complaint here – alleged several sets of misstatements, made by several defendants.  *Id.* at 447-48.  The court assessed each misstatement separately, applying a two-part analysis: (1) whether the complaint attributed the misstatement to a particular defendant, and, if not, (2) whether the complaint pled scheme liability.  *Id.* at 474-76.  Applying this analysis, the court held the complaint successfully attributed some corporate misstatements to

9

a pair of the individual defendants. *Id.* at 475. Given that attribution, the first part of the two-part analysis ended the inquiry; the court explained that *as to those misstatements* it need not address scheme liability. *Id.* ("Because the Court has already determined that Plaintiffs have successfully stated a claim for liability under Section 10(b) against Alstom, Bilger and Newey for the misleading statements made with regard to the Marine Fraud, it need not address the potential applicability of scheme liability under subsections (a) and (c) to this fraud.").[2] This is the holding cited in the Decision.

The *Alstom* court made clear, however, that when the complaint failed to attribute a misstatement to a particular defendant (as the Complaint here failed to attribute the Third-Party Misstatements to Mr. Peters), the court would need to proceed to the second step in the test and determine whether the complaint pled scheme liability. *Id.* at 476. The court held, ultimately, that the complaint failed to plead securities fraud where there were no allegations attributing misstatements to particular defendants and the complaint failed "to allege that there was a scheme to defraud that went beyond the misrepresentations themselves." *Id.* And the court admonished that a plaintiff does not plead scheme liability "by pointing to fraudulent statements and claiming that the defendants were part of a scheme to make those statements, as this method of pleading would result in the circumvention of the Second Circuit's attribution requirements . . . ." *Id.*

The same is true here. The Complaint alleges nothing more than that Mr. Peters, and others with whom he worked, made misstatements in connection with certain securities transactions. There is no allegation that Mr. Peters – or anyone else – engaged in fraudulent conduct beyond the making of those alleged misrepresentations. There is simply no scheme pled here at all. And

---

[2] Mr. Peters concedes that the Court need not determine scheme liability concerning the two trades as to which the Court held the SEC specifically pled that Mr. Peters made a material misstatement.

absent the existence of a fraudulent scheme, in light of *Janus*, Mr. Peters cannot be held liable for violations of Section 10(b) and Section 17(a) premised on misstatements not attributable to him. *See SEC v. Kelly*, 817 F. Supp. 2d 340, 345 (S.D.N.Y. 2011).  As to the Third-Party Misstatements, the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Peters respectfully requests that the Court reconsider its Decision, and dismiss the Complaint with prejudice to the extent it seeks to hold Mr. Peters liable for alleged misrepresentations made by others.

New York, New York
July 9, 2018

Respectfully submitted,

**ALSTON & BIRD LLP**

By: */s/ Brett D. Jaffe*
  Brett D. Jaffe
  Joseph G. Tully
  David C. Wohlstadter
  90 Park Avenue
  New York, NY 10016
  Telephone: (212) 210-9493
  Facsimile: (212) 210-9444
  brett.jaffe@alston.com
  joe.tully@alston.com
  david.wohsltadter@alston.com

  *Attorneys for Tyler G. Peters*